T.C. Summary Opinion 2009-4

UNITED STATES TAX COURT


REGINE C. YANG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 8061-05S, 4960-07S.    Filed January 7, 2009.


Regine C. Yang, pro se.

<u>S. Katy Lin</u> and <u>Jadie T. Woods</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  These consolidated cases were heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petitions were filed.[1]  Pursuant to section 7463(b), the decisions to be entered

_____

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

are not reviewable by any other court, and this opinion shall not
be treated as precedent for any other case.

Respondent determined deficiencies in petitioner's Federal
income taxes as follows:

| Year | Deficiency | Penalty Sec. 6662(a |
|------|-----------|---------------------|
| 2000 | $7,548 | - |
| 2001 | 7,741 | - |
| 2002 | 9,066 | - |
| 2003 | 4,629 | $926 |

The issues for decision are: (1) Whether petitioner is
entitled to dependency exemption deductions for her parents for
taxable years 2000, 2001, 2002, and 2003 (the years in issue);
(2) whether petitioner is entitled to itemized deductions greater
than those respondent allowed; (3) whether petitioner is entitled
to business expense deductions for Total Real Estate/Excel
Property Management or for Asian Business Services greater than
those respondent allowed; (4) whether petitioner is entitled to
deduct losses from her rental real estate activities greater than
those respondent allowed; and (5) whether petitioner is liable
for an accuracy-related penalty for 2003.[2]

_____

[2] Other adjustments to petitioner's itemized deductions are
purely computational and depend on changes to petitioner's
adjusted gross income and the automatic application of certain
eligibility phaseouts and deduction limitations.

## Background

Some of the facts have been stipulated, and we incorporate the stipulations and the accompanying exhibits by this reference. Petitioner lived in Michigan when she filed the petition in each docket.

Petitioner's parents are citizens of Taiwan, and they each have lawful permanent residency status. Petitioner's parents resided with her for part of each year in issue, and petitioner supported them when they lived with her. Petitioners parents also lived with petitioner's siblings for unspecified periods of time during the years in issue. When her parents did not live with her, petitioner sent them occasional gifts but did not support them.

From 1999 through sometime in September 2003 petitioner worked full time as an information technology director at RDA Group. For each year in issue petitioner filed two Schedules C, Profit or Loss From Business: One for "Total Real Estate/Excel Property Management", a residential real estate and property management business; and one for "Asian Business Services", which provided business services. For each year, petitioner reported some gross receipts for each activity but claimed net losses for each activity.

Petitioner signed a Form 872, Consent to Extend the Time to Assess Tax, for taxable year 2000. The IRS executed and mailed a

copy of the Form 872 to petitioner the following day.  The form extended the time to assess tax for 2000 to June 30, 2005.

Respondent issued a notice of deficiency for 2000, 2001, and 2002 on February 3, 2005, and a notice of deficiency for 2003 on December 5, 2006.  During the examination and at trial, petitioner provided myriad documents to support her claimed expenses, deductions, and exemptions.  These documents were mostly handwritten summaries, calendar pages, and lists prepared by petitioner.  She provided few actual receipts and invoices, and several of those were not in her name.  She did not provide copies of canceled checks to support her payment of expenses but claimed to have made many payments in cash.  Petitioner alleged that the IRS has discriminated against her in that her tax returns have been regularly examined for the past 10 years.  She claimed that the IRS lost many of her records and much of her supporting documentation and asked the Court to employ common sense and allow her deductions for expenses claimed.

## Discussion

Taxpayers are required to maintain adequate books and records to substantiate claimed tax deductions and to produce those records to the IRS when requested.  Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.  Deductions are a matter of legislative grace, and taxpayers generally have the burden of proving they are entitled to the deductions claimed.  Rule

142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).
These are largely substantiation cases, and the burden of proof
as to petitioner's eligibility for the claimed deductions remains
on petitioner. Sec. 7491(a)(1) and (2); Rule 142(a).

Petitioner argues that because of the expiration of the
relevant periods under the statute of limitations, the notices of
deficiency were not timely issued. With exceptions not here
relevant, section 6501 provides a 3-year period from the time a
return is filed for the assessment or collection (without
assessment) of any tax, including income taxes (the period of
limitations). The running of the period of limitations, however,
is suspended by "the mailing of a notice under section 6212(a)".
Sec. 6503(a)(1).

Although petitioner alleges that the extension date for
taxable year 2000 was not on the Form 872 when she signed it, the
revenue agent who solicited the Form 872 testified that the date
to which the period for assessment had been extended was clearly
listed, both when petitioner signed the form and the following
day when the IRS sent petitioner a copy of the executed form for

her records.[3]  We find that the period of limitations for 2000 was extended to June 30, 2005.

The IRS mailed the first notice of deficiency on February 3, 2005, within the extended period for 2000 and within the 3-year periods for 2001 and 2002.  The IRS mailed the second notice of deficiency on December 5, 2006, within the 3-year period for 2003.  Thus, the notices of deficiency were all timely issued.

1.  Dependency Exemption Deductions

Petitioner claimed dependency exemption deductions for her parents for each year in issue.  Respondent disallowed those deductions.

A taxpayer is entitled to a dependency exemption deduction for each dependent who satisfies the gross income test of section 151(c)(1)(A) and the residency test of section 152(b)(3), but only if the taxpayer provides more than one-half of the dependent's support for the calendar year in issue.  Sec. 152(a). A taxpayer's parents can be her dependents.  Sec. 152(a)(4).  It appears that petitioner's parents meet the section 152(b)(3)

---

[3] Petitioner introduced her copy of Form 872, Consent to Extend the Time to Assess Tax, together with the cover letter from the revenue agent.  Petitioner's Form 872 clearly states that assessment may be made on or before June 30, 2005. Petitioner's assertion that the executed Form 872 is somehow overridden or invalidated by the revenue agent's purported statement in October 2003 (that the IRS needed another 3-6 months to complete its examination) is without merit.

residency test because they have lawful permanent resident status.  Sec. 7701(b)(1)(A).

A taxpayer cannot prove that she provided more than half the support of her parents without establishing the entire amount expended for their support from all sources.  <u>Archer v. Commissioner</u>, 73 T.C. 963, 967 (1980); <u>Blanco v. Commissioner</u>, 56 T.C. 512, 514-515 (1971).  There is little or no evidence in the record as to the total amount spent for the support of petitioner's parents (by petitioner and from other sources).  Thus, petitioner did not prove that she provided more than half of her parents' support for any of the years in issue.  Furthermore, section 151(c)(1)(A) provides that a dependent's gross income may not exceed the exemption amount, but there is no evidence of the parents' gross income for the years in issue.  Accordingly, petitioner is not entitled to the claimed dependency exemption deductions for her parents for any year in issue.

2.  <u>Itemized Deductions</u>

A.  <u>Charitable Contributions</u>

Petitioner attached to her 2002 return one facially credible document to support her charitable contributions:  a "Car Donation Receipt" from a charity, dated December 31, 2002.  She provided no other credible documentary evidence in support of her contributions.

The car donation receipt states that petitioner donated a 1995 four-door Toyota Corolla and that the donor-determined fair market value was $4,825. The receipt does not reflect the condition of the car at the time of the donation; for example, by identifying whether it was operable, specifying the number of miles on the odometer, or providing other descriptive information beyond make, model, VIN number, etc. This lack of specific description of the condition of the automobile is particularly significant given testimony that petitioner informed the IRS that she had been in a collision and had totaled that car before donating it. Petitioner did not deny telling the revenue agent that she totaled the car, nor did she assert that the value claimed on the receipt was salvage value as opposed to some measure of fair market value for an undamaged vehicle.

Under these circumstances, we find that petitioner's receipt does not describe the car in "detail reasonable under the circumstances" as required by section 1.170A-13(b)(2)(ii)(C), Income Tax Regs. Furthermore, petitioner did not produce written records establishing how she acquired the car or its cost or other basis, as required by section 1.170A-13(b)(3), Income Tax Regs. We conclude that petitioner is not entitled to a charitable contribution deduction for this item.

Petitioner's other records in support of her charitable contributions were not convincing in proving either that she made

the claimed contributions or that they were charitable expenditures and deductible under section 170 rather than expenditures for personal, family, or living expenses which are not deductible pursuant to section 262.

B. Unreimbursed Employee Business Expenses

Petitioner claimed miscellaneous itemized deductions for each year in issue. She provided numerous handwritten schedules to explain her deductions but did not provide canceled checks or credible receipts to substantiate her expenses.[4] Petitioner also deducted certain expenses related to her work at RDA Group but admitted that she did not request reimbursement for those expenses, even though the company had a reimbursement policy. Petitioner's failure to seek reimbursement for her expenses from her employer prevents her from deducting those expenses as unreimbursed employee business expenses. See Orvis v. Commissioner, 788 F.2d 1406 (9th Cir. 1986), affg. T.C. Memo. 1984-533; Lucas v. Commissioner, 79 T.C. 1, 7 (1982).

For each year in issue, petitioner claimed job search expenses allegedly paid to look for work in California. The documents petitioner submitted to substantiate those expenses

---

[4] For example, petitioner listed numerous newspapers and magazines to which she allegedly subscribed, with prices, but she offered no credible evidence that she actually paid for the subscriptions or that the publications were ordinary, necessary, and related to her work for RDA Group and not reimbursable by her employer.

allege suspiciously similar expenses for each of several years (down to the number of envelopes mailed in each year).

Petitioner has not submitted any credible evidence to demonstrate her eligibility for itemized deductions in amounts greater than those respondent allowed.

3.   Schedule C Business Expenses

Respondent allowed expenses for petitioner's two Schedule C business activities but only to the extent of petitioner's reported income from those activities.  Petitioner failed to submit any credible evidence to substantiate ordinary and necessary business expenses greater than the amounts respondent allowed.  Thus, petitioner may not deduct the losses she claimed for these activities for the years in issue.  See secs. 162(a), 6001; Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Farguson v. Commissioner, T.C. Memo. 1983-615 (rejecting the taxpayer's poor documentation as inadequate to substantiate purported expenses).

4.   Rental Real Estate Losses

For each year in issue, petitioner claimed losses from her rental real estate activities.  Respondent disallowed the claimed losses in excess of $25,000 for each year because (1) petitioner failed to substantiate that her expenses exceeded her rental income by more than $25,000, or (2) (in the alternative) any losses in excess of $25,000 are suspended pursuant to section

469(i) because petitioner's rental real estate activity was a passive activity for the years in issue.

Petitioner did not substantiate rental real estate expenses in amounts greater than those allowed by respondent. Accordingly, we need not decide whether petitioner satisfied the exception in section 469(c)(7)(B) which exempts certain real estate professionals from the $25,000 limitation of section 469(i).

Petitioner has not satisfied her burden of proving that she is entitled to deduct the expenses she claimed, and respondent's determination to disallow claimed losses in excess of $25,000 is sustained.

5.  Accuracy-Related Penalty

Under section 7491(c) the Commissioner has the burden of production with respect to a section 6662 accuracy-related penalty.  Once the Commissioner shows that imposition of the penalty is appropriate, the taxpayer continues to have the burden to prove that the Commissioner's penalty determination is incorrect.  Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Under section 6662(a) and (b)(1), taxpayers are subject to an accuracy-related penalty equal to 20 percent of any underpayment with respect to which they were negligent or disregarded appropriate rules and regulations.  Negligence, in

the present context, refers to a failure to make reasonable attempts to comply with the Internal Revenue Code. See sec. 6662(c). Section 6664(c)(1) provides that no section 6662 penalty may be imposed if the taxpayer shows that she had reasonable cause for and acted in good faith with respect to the underpayment of tax.

Respondent determined a $926 accuracy-related penalty for 2003 and asserted that petitioner's underpayment of tax was due to negligence or disregard of rules and regulations. Respondent argues that the evidence proves petitioner's negligence and disregard.[5]

We agree that petitioner failed to produce records that section 6001 required her to keep. We find her hand-written logs, summaries, and calendars (in the absence of any substantiation from canceled checks, receipts in her name, paid invoices in her name, and other reliable written records) unconvincing and demonstrative of a failure to reasonably attempt to comply with the Internal Revenue Code. We are satisfied that petitioner's underpayment results from negligence unexcused by

---

[5] The evidence respondent relies upon includes: petitioner's lack of records, receipts, and substantiating documents; her apparent claiming of the same expenses in multiple places on her return; her deducting personal, family, and living expenses; her submission of unreliable, sometimes internally contradictory documents; and the implausibility of petitioner's claims to have driven many hundreds of miles for her Schedule C and Schedule E, Supplemental Income and Loss, activities on the same days that she worked 10 or more hours at RDA Group.

reasonable cause or good faith.  Respondent's penalty determination is sustained.

For the foregoing reasons,

<u>Decisions will be entered</u>

<u>for respondent</u>.